Frances H. BACH, Appellant,

v.

Alfred W. PERKINS and Sue Garrett Perkins, Appellees.

No. 14045.

United States Court of Appeals Ninth Circuit.

June 7, 1955.

Rehearing Denied July 7, 1955.

Newlin, Holley, Tackabury & Johnston, Hudson B. Cox, Los Angeles, Cal., for appellant.

Carl Hoppe, San Francisco, Cal., for appellees.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

PER CURIAM.

Plaintiffs below, Alfred W. Perkins and Sue Garrett Perkins, citizens of California, sought and obtained a declaratory judgment against Mr. Perkins' niece, Frances Hadcock Bach, a citizen of Wisconsin. The district court held that the Perkinses, or either of them, may live in Mrs. Bach's house in Westwood near Los Angeles at a rental of $15 per quarter so long as either Mr. or Mrs. Perkins survives. Fifteen dollars each three months was the rental accepted from the Perkinses for some years by Mrs. Isabel Perkins Hadcock, mother of Mrs. Bach and the latter's predecessor in title. For a period of time, Mrs. Bach acquiesced in accepting a similar nominal rent. The property has become quite valuable. Mrs. Bach now wants to sell the house, she says.

Appellees (plaintiffs) never have had a formal lease. There is not extant any instrument creating a life estate. They produce letters from Mrs. Hadcock, now deceased, and Mrs. Bach written in happier days when the Perkinses were the ungrudging objects of the bounty of Mrs. Hadcock and Mrs. Bach. None of these writings satisfy the requirement of a memorandum in writing required by the California Statute of Frauds,[1] which statute was pleaded by the defendant.

The trial court found that the plaintiffs have a life tenancy or right to occupy at the nominal rental above mentioned so long as either shall survive. Also it found that Mrs. Bach is estopped to assert the Statute of Frauds.

---

1. California Civil Code, Section 1624.

For the purposes of this case, technicalities of estoppel theories need not be considered beyond saying that any kind of an estoppel as a minimum involves some kind of a reliance or change of position to the detriment of him who asserts estoppel. On combing the record, the reliance one finds can only be that the plaintiffs, who are the financially hapless relatives of the well-to-do Mrs. Bach and of the well-to-do late Mrs. Hadcock, have acquired a standard of living beyond the $200 per month which the plaintiffs receive from the estate of the late Samper A. Perkins. Samper has caused, in a way, all of the trouble herein by having money and by leaving a portion of that money to his brother, Alfred, and a greater portion to his sister, Mrs. Hadcock. Much of Mrs. Hadcock's money is now Mrs. Bach's money.

There seems to be no case in California that goes so far as to hold that any kind of an estoppel can be grounded alone upon the possibility of one's having to give up a modest standard of living upon which he has come to rely, necessitating in its place a very meager standard. There must be other factors. Sometimes the prior giving up of something beneficial helps.[2]

Plaintiffs' troubles, they admit, have been precipitated by their starting an action in Wisconsin which probes into the administration of the trust estate of the late Samper Perkins. Whether their assertions in Wisconsin are valid or ill-advised is not here for decision.

Counsel for the plaintiffs has pulled all stops to establish the pathos of the position of his elderly clients. And it does look as if they are more foolish than vicious.

In the history of human affairs, maybe no particular harm would be done by a court's letting Mr. and Mrs. Perkins stay in Mrs. Bach's house, if one could isolate the transaction and avoid establishing a precedent. But would the precedent leave any validity to the Statute of Frauds? It always has had a very salutary purpose which should not be forgotten.

The judgment below on the complaint is reversed. The judgment on the counterclaim, from which no appeal was taken, naturally will stand.

---

2. See Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88; Grant v. Long, 33 Cal.App.2d 725, 92 P.2d 940; Monarco v. Lo Greco, 35 Cal.2d 621, 220 P.2d 737. (In the last mentioned case most of the California authorities are collected.)

It is true as pointed out in 3 Stanford Law Review 281 that the California courts have reduced the Statutes of Frauds to shreds time and again. But even among the shreds one always finds some reliance to one's financial detriment on the promise which is enforced. Perhaps he who has to get out of what he has come to regard as his home is a victim of more cruelty than one who has to sustain a financial loss in reliance upon another's promise. But still this court cannot find in the California cases any decisions or dicta that uphold the position of the Perkinses, much as it would like to agree with them.